I now call Case No. 19-2261, Safeguard Base Operations v. United States. Counsel, whenever you're ready. Thank you. Good morning. May it please the Court. Alex Thomas-Chuck for Appellant Safeguard Base Operations, LLC. During this argument, I may refer to the appellant simply as Safeguard. This case involves an unusual situation where the procuring agency, the Federal Law Enforcement Training Center, also referred to as FLETC, evaluated Safeguard's proposal through multiple rounds of corrective actions at the GAO, then saw an opportunity to disqualify Safeguard. This qualification was arbitrary and capricious and based on the actions of a few key individuals who wanted to, quote-unquote, send a message and, quote-unquote, get rid of Safeguard. That decision, which was spiteful, perhaps even vengeful, should not stand, especially since this contract will run until 2025, and Safeguard was significantly less expensive than the awardee. Let me ask you a question about your motivation theory. I mean, there were other, at least some, whose price point was lower than yours, correct? Your Honor, your question broke up a little bit. There were a total of seven offerors for this Small Disadvantaged Business Award, and the prices ranged quite a bit from low to high. Right, but the answer to my question has to be yes. There were at least two offerors who were disqualified for the same reason Safeguard was disqualified for, whose price was lower than Safeguard's, right? I don't know if their price was lower in each instance. There were actually a total of four bidders, including Safeguard, who were ultimately disqualified. Right, one was priced higher than Safeguard and two were priced lower, correct? That could well be the case, your Honor, yes. I was focused mostly on the awardee in our proposal, but there were— Right, but if that's the case, if there were lower-priced bidders who were disqualified, then how can you argue that this was designed just to target Safeguard? It was designed to target Safeguard because of the particular history that Safeguard had with FLETC, the procuring activity. Safeguard's joint venture partner, SRM, actually performed the contract from 2012 to 2018, and it, along with three other bidders, was disqualified for not copying the Schedule B prices, the plug numbers that FLETC had provided. The other offerors, however, had other issues with their technical proposals, as reflected in the various decisions of Mr. Williams, the source selection authority. So this was a procurement in which price was an important factor, but it wasn't the only factor. Okay, counsel, let me interrupt to be sure I understand your position on appeal. So is it, based on the argument thus far, that unless we agree that there was some sort of bad fate, there was nothing wrong with the procurement, the standard, and the clarification, or whatever else we might call it, of the bidding requirements, that unless we agree that there was some sort of bad fate to be explored, that there's nothing to complain about? Respectfully, no, Judge Newman. That's not our position at all. There was a manifest error in the conduct of the procurement because, as we point out in our briefs, and respectfully, one of the errors we believe the lower court made below is not reading the solicitation per its plain language. In 16 separate instances in the contract line items in Schedule B, safeguard and other offerors were instructed, and this is in all caps surrounded by asterisks, do not submit pricing for these CLINs. And we adhered to that instruction, as apparently did three other offerors. I know, but, sir, as you well know, the Court of Federal Claims and the government here in its position is relying on Amendment 3, which clarifies, to the extent there was ambiguity, in their view, I guess, what you're saying. And the addendum or the Amendment 3 is quite clear, correct? I don't think it's clear. In point of fact, if you look at Amendment 3, that language continues to include the direction in all caps and asterisks, do not submit pricing for these CLINs. That language appears without any strikethroughs, without any commentary. It's not deleted. That language appears in Amendment 3. It also appears continuing through Amendment 5. So at all times throughout the conduct of this procurement, the instruction, do not submit pricing for these CLINs, was part of the solicitation. But the amendment says that you're supposed to include in response to a question about, well, does that mean we include your numbers or nothing? And the answer was include the list of not to exceed amounts or blah, blah, blah, blah, blah. It says that, doesn't it? Respectfully, Your Honor, I don't think that resolves the issue because you still have the language in Amendment 3 in the contract line item schedule, do not submit pricing for these CLINs. Buried in an attachment to Amendment 3 in the question and answers is a hortatory statement pleading, please include these numbers. And I would note that these numbers themselves, they don't include any labor costs. This is all for supplies and what is referred to in the jargon as sort of other direct costs, supplies, TVs, replacement TVs, that sort of thing. There's absolutely no discretion with respect to those numbers. Those are numbers provided by the procuring agency, FLETC. They were disclosed to all of the offerors with the statement, please include these numbers. I understand you're arguing that you think please include means that the government is saying that it itself will please include them. No, I'm not saying that, Your Honor, but I'm saying that that language is hortatory and is less directional than the language that appears in Amendment 3 itself in the pricing schedules. Where you have the language, do not submit pricing for these CLINs in 16 separate instances. If that's the case, if there's a problem between do not submit and please include that makes the solicitation confusing or ambiguous, why wouldn't that be a patent ambiguity that you would have an obligation to inquire about? Well, first of all, the lower court found, and this is in the appendix at page 41, that there was no ambiguity, number one, and we frankly share that view that there was no ambiguity, that the language in the Schedule B CLIN governed. But if someone were to have found now that there's an ambiguity, at worst it's a latent ambiguity. I don't think it comes even close to being a patent ambiguity, and if it's a latent ambiguity, then it should be construed against the government as the drafter of the solicitation. Well, how could it be latent? I mean, it's on the face of the solicitation. You've got the language, do not submit, and you've got the language, please include. Because after Amendment 3 was issued, you have Amendment 5, which repeats the same language in the CLINs, do not submit pricing for these CLINs. And furthermore, if you go, and to the extent we're getting into ambiguity questions, there is an order of precedence clause set forth in the solicitation itself, which makes it very clear that the Schedule B governs. That is the most important item, as one would expect, because that lays out what the labor requirements are and what the pricing is. But first you have to find whether there's an ambiguity. Assuming there is an ambiguity, then you'd have to apply the patent ambiguity standard, and only then would you get to the order of precedence clause, right? Well, we don't think there's an ambiguity, just to be clear, Your Honor, and we haven't argued one. We submit that the solicitation considered its entirety, directed us not to submit pricing for these CLINs. Apparently three other offerors made the same reading and went ahead and did not submit pricing for these CLINs. Look, the most important thing is why does this matter? Everyone understood what the pricing for these CLINs was. Interestingly, Counsel, though, you argued earlier that the government, through a cost-realism adjustment, was not allowed to just put those numbers in for you. And now you're arguing, at least with respect to your waiver and clarification, or even with respect to your it-doesn't-matter view, is that they should have just accounted for those. Your Honor, that's not accurate either, with all due respect. And the reason I say that is because there is one sentence in the GAO protest in which there's made a reference to the price evaluation. But at the time that that GAO protest filing was submitted, there was no understanding about what adjustments had been made. It was only through the litigation at the Court of Federal Claims, in which I became involved, that we found out exactly how FLETC had dealt with the pricing issue. So I don't think it's fair to say that we argued at the GAO that the government couldn't adjust the prices. I don't think that's actually a fair reading of what was said. There was no understanding at the time that that GAO protest was submitted how the evaluation had unfolded. And the reason there was no understanding about that is because for two of the post-award GAO protests, the agency immediately reported it was going to take corrective action. So there was never any full record about how the agency had evaluated the prices, really until the decision of the merits by the GAO. And even then, only to a limited extent, not the extent to which the record was revealed at the Court of Federal Claims when the administrative record was produced by the government. So I don't think our position with respect to this issue has changed respectfully. We submit that the solicitation is not ambiguous, that the language in the CLINs governed. Apparently other offerors felt the same way. And I think the critical part of this is that we were disqualified. We weren't considered on the merits. And I think that the reason that the lower court sort of made that finding was because it determined that the error was material, and we would submit that it was not because there was no discretion involved in it. This was purely a transcription matter. All right. Can I just stop you there? And I know your time has expired. But let me just review the bidding here with respect to this question of ambiguity or lack of ambiguity and how the original solicitation and the amendment sort of sync. The government's position and what the Court of Claims said is this language, do not submit pricing for these CLINs, was intended to mean that you shouldn't come up with your own pricing. Don't submit your own independent pricing for this. Whether or not that was clear or unclear, there was a question asked and answered in the amendment, which is presumably how any ambiguity should be clarified. You would agree with that, would you not? If there is any ambiguity, it can and should be clarified by questions and answers. I would think that would be preferable. All right. So this question was posed, like, do you want us to submit your pricing or some pricing or whatever on these CLINs? And the answer to the question was, for bidding purposes, please include the following not-to-exceed amounts. That seems quite clear to me. I understand your position is because they said, please, maybe they didn't really mean it. But if we reject that argument, then they are clarifying what obviously some people may have thought was ambiguous very explicitly. So what's the problem with that? Are they not allowed to clarify something that some people perceived as ambiguous? Are they not allowed to do that? Do they not have the authority to do that? If they hadn't said please, if they had said you must include the not-to-exceed marks, would that be sufficient? I think the problem in this particular case, Your Honor, and, for example, look at the appendix at page 4251, where in Amendment 3 the language appears in CLIN item 7AA, the service request maintenance item. It says explicitly, do not submit pricing for these CLINs. And that language is part of Amendment 3. It was repeated in Amendment 5. And I think if you view the solicitation in its entirety, you've got language, or directive language, not saying please, do not submit pricing for these CLINs in all caps with half risks. But the answer is that the assumption is that they meant don't submit your own pricing. But how can you be clearer than in response to a question, an answer being, should I submit your numbers or should I not? And it says, for bidding purposes, please include the following not-to-exceed amounts. How could they have said it more clearly other than taking out the word please? Well, they could have amended the CLIN structure in Schedule B. For example, at page 4251, they could have lined through the direction, do not submit pricing for these CLINs. Or they could have deleted that. Or they could have said in the answer. Their view is they meant it because they meant the otherwise, when you're supposed to submit pricing, the normal interpretation of that is you're supposed to come up with your own price for those particular tasks. And they didn't want you to do that. They wanted you to use their not-to-exceed amounts. Right? I think the problem is that the CLIN language, the direction doesn't say do not submit independent pricing for these CLINs. It says do not submit pricing for these CLINs, period. Well, couldn't it mean that pricing refers to offer or provided pricing? Whereas not-to-exceed amounts that you're pleased to include, that you're asked to please include, refers to the amounts that the government provided. So you've got offer or provided pricing and government provided amounts. It could have said that, Your Honor, but it didn't. And it didn't change, again, in Amendment No. 5. And we read the text literally, which is, I think, what the law of this circuit requires, that if the solicitation language says do not submit pricing for these CLINs, that means do not submit pricing for these CLINs. And that's how we interpreted it. Can I ask one further just cleanup question? You started by talking about the bad faith allegations or assertions you make. If we conclude that the government, hypothetically, if we conclude that the government properly disqualified because of the things we've talked about here, do we have to reach the issue? Do we appropriately reach the issue of supplementing the record or not? I think, yes, we do. And we raise that as a separate issue in our brief. But if we conclude that the government had a legitimate reason to disqualify you, then how could you ever prove that faith prejudiced you in the bid process? Well, because we sought, based on our amended complaint in Count 3, we sought discovery, limited discovery, I would note, on that issue, and we were foreclosed from pursuing it. And the sequence of events is very troublesome, and we submit that evidence would have been obtained that would have supported and proven the allegation of bad faith. So I think, respectfully, that is still an issue before the court, even if you conclude that our reading of the interpretation was incorrect. And I have another point I want to make about that, but I believe I'm into my rebuttal time. What's the law there? I mean, if you conclude that the government had a legitimate reason to disqualify you, can finding a bad faith still supersede that or not? I think the law is unsettled in that area, but we would submit in this case it does, because it would explain why the decision was originally to evaluate us on the merit. Indeed, you have the contracting officer in the record concluding we should be in the competitive range. And then at the last moment, on September 20th, you have a two-sentence decision of the source selection authority basically disqualifying us. Something pretty significantly happened during the course of this procurement, and respectfully, it doesn't make a lot of sense. And had we been enabled to have some limited discovery on that issue, we submit that would have turned up sufficient and substantial evidence in support of our claim of breach of the duty of good faith and fair dealing, Your Honor. And it would have been based on those affidavits that you submitted, correct? Well, we had a count three in the complaint, and then we had two particular affidavits that we submitted that are part of the record, and we submit those constitute what are referred to in the law as hard facts, and that we should have been entitled to at least some limited discovery with respect to the hard facts that had been alleged both in the amended count three as well as in the two affidavits. Yes. Okay, thank you. We'll restore rebuttal time. Let's hear from the government. Mr. Oliver? Good morning, Your Honor. I'm sorry. No, it's correct, Mr. Oliver. Mr. Oliver, okay. Yes, Mr. Oliver. Good morning. May it please the Court. If I could start with Amendment 3. Could you just ‑‑ I'm sorry. Just for my purposes of understanding this, could you just start a little bit with the last question about whether or not we would reach the issues of bad faith or discovery in connection with bad faith if we were to conclude hypothetically that the government acted appropriately in the disqualification? Yes, Your Honor. I'll start with that question. The answer is no, you do not need to reach bias. You do not need to reach supplementation if the Court finds, as did the trial court, that the agency's decision to exclude safeguards was indeed rational. And the reason is because the standard ‑‑ a couple of reasons. The standard set forth by this Court in both Axiom and Comey provides that supplementation is only warranted if the omission of the evidence in question would preclude effective judicial review. And so here the trial court correctly found that there was ample evidence in the record that the agency's decision to disqualify was rational, that the safeguard did not include required price information in its proposal, as did several other offerors, all of whom were disqualified on exactly that basis. Counsel, you're not saying that it's perfectly acceptable for the procurement to be conducted in bad faith if, in fact, the result can be justified on some other basis? Is that the government's position? No, Your Honor. The question is the threshold standard for when a protester is entitled to supplement the record. And here our position, Your Honor, is that the protester, safeguard, has not provided the type of hard evidence that overcomes the presumption of regularity. There must be some question and evidence that they have put forth that questions the rationality of the contracting office's decision. The focus of count three of their complaint, which is what Mr. Thomas-Chuck was referencing, is based upon the idea that the agency excluded safeguard for pretextual reasons, right? And that is the record evidence, the administrative record, utterly reflects that. On appendix page 7999, you see, Your Honor, that as was referenced, I believe, in the cross-link with Mr. Thomas-Chuck, that there were two other offerors who had lower prices than safeguard. Yeah, but didn't those other offerors have other problems with their bids that would have disqualified them for other reasons? Well, that may be the case, that they were not as good as D&O in terms of their other issues, but the important point, Your Honor, is that the source selection authority in its source selection decision document put an asterisk by all those offerors, not only safeguards, but the other two offerors whose prices were lower than safeguards, who were ineligible for award because of their fairly- Well, Counselor, your friend on the other side said that the other offerors whose price was lower than safeguards had disqualifying factors that safeguard didn't have, not compared to B&O, but compared to safeguard. In other words, safeguard would have not been disqualified while those lower-priced offerors would have been. Respectfully, Your Honor, that's incorrect. Again, I'll refer you to the source selection decision on Appendix Page 8003. It focuses on what the source selection decision had to say regarding safeguards. And here it says that this offeror referring to safeguards' proposal was technically noncompliant because of their price and failed to conclude. But in the prior source selection, if you look at there on Page 7996, you see the factor rating that was provided. This is a public recording. I won't say what the rating is, but you'll note for the record on Page 7996 of the appendix what that rating is. Okay? And so that rating, which is not a good rating, compared to all of the other ratings that you see on that page, all of them were not on the same level as B&O. So I hope you're saying that if they would have lost the bid anyway, it makes absolutely no difference whether there was good faith or bad faith. Well, yes, Your Honor, there is evidence in the record that because of— The answer to my question is that's the government's position. If they would have lost anyway, it makes no difference. If there was at least, let's say, a prima facie position, let's say sufficiently, say, to warrant discovery, you say it doesn't matter because they would have lost anyway. Well, I think our position is slightly different than that because this is a best value procurement. Okay? So this is not like a lowest price TA where I can say, well, they're ranked 39 out of 40 in terms of price, and therefore there's no way they could have won. It's kind of based on a hypothetical that it's hard to answer. I can point, Your Honor, to the ratings that they received, which were lower than the intervenors, and suggest that they wouldn't have won. But I can't say— You're talking about the merits. I want to know what the government's position is about procurement, about good faith and fair dealing, about transparency. Yes. Yes. Now, our position is this, and I'll try to state as plain as I can. Our position is simply consistent with what the Federal Circuit's statements are regarding supplementation, that the only reason we are saying—the reason we are saying that safeguard is not entitled to supplementation is because they have failed to meet the standards set forth in axiom and comment, which provides that the evidence that they seek to provide must be necessary for effective judicial review. And the reason in this instance, in this case, that it's not that the evidence that they have provided is necessary for— is not necessary for effective judicial review is precisely because the evidence is for several reasons. One is because the administrative record evidences the fact that there was no pretext. And second, the evidence that they have brought forth is not connected to the actual procurement decision, as we've argued in our Federal Circuit brief, and as I believe the trial court found as well. That, Your Honor, is why we're arguing that the supplementation is not warranted. Again, like, it's specific to the evidence that the attorney for the agency had advised. Again, the attorney for the agency—the questions, the statements and questions were regarding a different case, SRM and a civil board of contract appeal case. Not this case, not this client. It was an affiliate of Safeguard, which is SRM, not Safeguard itself, one. And second, as the trial court found, the attorney was a non-voting member of the Selection Authority Board, who had no control over the SSA's decision, according to their record evidence. There must be something that this court has found, and impressive, that there must be something that is put forth regarding supplementation. Regarding evidence that you're seeking discovery of, that suggests that the contracting officer's final decision is suspect, or that the administrative record is suspect. And our position, Your Honor, is that they have not provided any evidence. Well, it is a fact. It is a fact, is it not? And I understand that this isn't in the affidavits that the court rejected, but those affidavits reveal that Ms. Wood and Mr. Cain were involved in a not-too-pleasant lawsuit with Safeguard previously, and it does seem a little odd that they were even involved with the solicitation, given that. Well, I'm not saying it was odd. The contracting officer was involved in the procurement, the provision of services that is at issue here, where the same type of services that were at issue in that contract. Those are different contracts, and again, those SRM and not Safeguard. But again, the question really is, did the protester, did Safeguard provide well-grounded hard evidence that gives some reason to question the administrative record that was put forth, which indicates that the agency disqualified on a consistent basis off work that did not include required information. They didn't target Safeguard. Contrary to the allegation, the record indisputably defeats the notion that they selectively targeted Safeguard. And so there wasn't a rational basis. Had they included the required information, they would have been in a different footing than they are now. They were disqualified. The only rationale for disqualifying was for doing something that they unquestionably did not do. Why don't we move on to that issue, which is the major portion of this appeal. Yes, Your Honor. And so regarding Amendment 3, I'll note one thing first. I noticed that counsel for Safeguard in today's argument has reprised an argument that Safeguard made before the trial court, which the trial court rejected. That is, that the please include is auditory, not mandatory. But I would note that if you look at Safeguard's brief, I'm pretty sure they did not reference please include. That was not their argument. And so to that extent, that argument's waived. Certainly had they made that argument, we would have resuscitated or not resuscitated. We would have argued again, as we did below that blue and gold. If that's their argument, then that's a patent error that they should have brought to the attention of the agency and waived it. But we didn't make that argument because again, they didn't break. But more affirmatively, what counsel argued regarding the text is really missing, is that they relied heavily upon the language in the original court station and in the amendment that says do not include, do not connect pricing for the claims in question. No question it says that. So again, the job of the court in interpreting the solicitation, which includes both the original solicitation as well as the amendment, is to give effect to both that language as well as amendment three. And so when you do so, there's only really two types of prices, right? There's the prices that you, that the offeror provides. And then there's the prices that the government provides. And so amendment three, question nine, and in question 16 makes it crystal clear that offers are going to include the government furnished prices. Well, if it's so crystal clear, counsel, if it's so crystal clear, how come four out of seven offerors got it wrong? Right. Well, I will speculate because I don't, I don't have any administrative record regarding the other three or, or have any real knowledge. As to why they are getting, but my best guess, your honor, is that they did not read all of them in three. And then they signed off on it. Maybe three is part of the record. Part of the solicitation. There's no question about that. They don't argue that. But the thing is, they didn't read as did the other offers the questions. In which they ask legitimate question, the original solicitation said reference listed prices for these plans, listed government feeling and not succeed prices, but they didn't provide it. So of course offers are not worth it. Well, what, what would you like us to do? What are those prices? And so I do submit that to answer. We know who asked those questions. No, we don't know. We do know it was an offer or, but we don't have a way. I mean, it's not in the record and so I can't tell the court which offer or submitted it, but we do know that there were two questions that are directly on point that question in question nine, as well as question 16. Well, which is, well, the government provided a ceiling number for the Clinton issue to be included for submission and volume three price. Now I get that language, defeat the argument that the paper actually makes and appeal, which is, oh, well, yes. I mean, this language simply means is referring to kind of what would happen post-contract the resulting prices. It's not something necessarily that has to do with bidding or to be included in pro. Well, of course, the text of this through record to speak that it's in the question, they answered question. I'm just forbidding purpose. And then the question and question 16, excuse me. Is that the question of the garden, what is to be included for submission in volume three, right? And so it's clear that the language could not be cleared that he wanted these prices to be in the proposal in the price proposal. And that was important that was material. Because these prices, although yes, it's actually their government price. And so we know what they are. They nonetheless are rolled up into a total evaluated price that the agency then uses to evaluate the price of all of the offers. So if you can, so if you do not include the $6.1 million worth of prices in your proposal, your agency will not be operating on an Apple established basis. And I would like to actually provide a response to safeguard answer or response that. Yeah, it is absolutely true. As I believe your honor pointed out that in the, one of the GA protests, the agency had had increased, had been itself saying, okay, well, the off war here safeguard did not include the required prices. We will increase their price by $6.1 million and evaluate that. But then they are protested. And on page of the appendix, you'll see exactly what safe. This is safeguard. And they, they say that the agency irrationally adjusted safeguards proposed price. And contrary to what they were, they protested with crystal clear what the agency did. They don't want to say on again, page eight, seven, six, nine of the appendix. Perhaps the most inexplicable and clearly around. Aspect of the evaluation. Increase. To increase safeguard proposed from fixed price for this effort by approximately $6.2 million. Can I, can I ask you about that? I'm a little confused by what you're saying, because I thought the point was that the agency rejected the bid and. Their position is you should have just added those numbers in to make them all comparable. So I'm not. The agency did not add that 6.1 million in to the bottom line. Let me be. I'm sorry. Let me, let me be clear. The procurement history of it is somewhat peculiar. And so far as there were several GAO protests and there are several corrective actions. And so his earlier iterations of this procurement. The agency acknowledged that, that the prices were not included by safeguard and they on their own, the agency just adjusted the price accordingly and raised their price by $6.1 million. And then, but at a certain point in August of 2018 safeguard did what I just said. Well, you can't do that. You're increasing our price. There's a FAR provision 15.404 that says in a four or six price, you can't do that. You can't, you can't adjust our pricing. Okay. We're not going to do that. We will make corrective action and we will, we will use the price. And so there was a final source like division, the final one would be agencies that determine that safeguards price of huge proposal was non-compliant because it did not include. Are you not objected to your increasing their price by $6.1 million? Would this all have been resolved and we wouldn't be here? The agency would have just fixed it. I'm sorry. I didn't mean to cross talk over you. No, no, your honor. We would, I'm sure. I mean, it's crystal ball, but I would say we would still be here because safeguard almost certainly would have still lost even with the, I mean, I mean, we actually know that because they were still losing with, while the agency was increasing their price, adjusting their price to include the required pricing information. They were still losing. They were losing to the intervener to be enough and they were protesting and protesting. So we're pretty certain had the agency continued to adjust the price, they still would have protested and say, there's rounds and we still, well, at least it would have gotten to the point. My question is a little different. My question is we're here on a particular issue, which was whether the agency could disqualify them for not having put the numbers in. And you're telling me the history of this case is the agency. Indeed was willing to put those numbers in and presumably, and this is my question and it would have done so in the absence of safe cards, objection to doing that. Do you understand my question? I do want to say your question, your honor. Yes. Let me answer it. The question is given the fact that the agency did in fact adjust their price during the procurement history, if safeguard had not brought to the attention of the agency for 15.404, which says in this type of procurement with the fixed price, you can't just add the price. Would we still be here? That's hard to say because it's going to have the space, like the agency itself would not have at some point realized, well, we can't do that. And would they have eliminated safeguard? Not on a price non-compliant basis, but on the basis that their technical proposal, as I mentioned earlier, during this argument. To follow up on this then, on your position that they might or could have accepted the price adjustment and what I don't understand is why were they disqualified rather than given a decision on the merits? And it doesn't, you say that the agency may have made some mistakes, but they fixed everything. Safeguard should have known it was fixed, even though you had to look in the fine print to find it. And then, however, they were disqualified. How do you make that leap of reason? Well, they were disqualified because they're ultimately the agency determined that they could not, and it's just the correct vision. They could not simply adjust their prices under, under the cost realism provision of the FAR. So the only other way to make an abstract comparison was doing it would be to engage in discussions and to, and for them to revise their proposals via discussions. But the solicitation was crystal clear that all the off lowers needed to put their best foot forward and expect the proposal and not expect the AP to give them an opportunity to make corrections, material corrections. And so no matter how many mistakes, no matter how strange, no matter how much large type repetitively, they say do not include these line items. Right? Nonetheless, you say that this is all their fault? Yes, Your Honor, because they do not include prices, refers to their own prices in light of amendment three, in which there were two answers to two different questions concerning the price of that issue in the agency. In both instances, unequivocally stated, please include these government furnished prices in your proposal. And so that those are 16 different contract line items. And under the relevant case law, that type of admission is a substantive admission, particularly because the price is those 6.1 million dollars. It's rolled up into a total evaluated price. And so there's no way to compare. But they didn't lose on price. They were disqualified. That's the question I haven't yet heard you answer. Right. Right. They didn't lose because of their price. They lost because they didn't submit the required pricing information. That would allow the agency to compare prices on an apples to apples basis. Because B&O, the intervener provided, as the other offers provided all the required information. And therefore the agency could in fact do a best value judgment and compare on an apples to apples basis, the prices of those offers who complied with the solicitation. But those offers who did not comply with the solicitation and did not provide the price of that issue, the 6.1 million dollars worth of cleanse, you could not do an apples to apples comparison. The only way you could do that is if they could amend or revise their proposals, which the agency was clear, that was not something that they could expect to do because discussions were not going to happen in this solicitation unless the agency decided that. But that was a, it was clear from the solicitation that discussions was not something the agency intended to do. And certainly these types of prices are not the types that fit within clarifications. Because as this court has stated in the Dell federal systems case, clarifications are not to be used to cure proposal deficiencies or material emissions that alter in a material way the cost elements of the proposal. And that's exactly what it certainly did. I mean, all of these clients 6.1 million dollars worth of prices certainly materially alters the safeguards proposal. And so it was rational for the agency to exclude safeguards for failing to do what the solicitation required them to do, which was to include those prices in the proposal. So that could then be rolled up and the agency could then evaluate the total evaluated price on an apples to apples basis. The rest of the proposals that are compliant. And this then goes, does go back to church. Post question. And the one I started. With your friend on the other side with, which is that had there been a permissible cost realism that would have allowed the money to be put back in. The only question would be whether any, any other factor worse was sufficient to disqualify safeguard. That is correct. If, if, if the agency just evaluates, if it doesn't as well, notwithstanding the part provision, then which is what they did before that part of reason was brought to a detention by safeguard. Safeguard was still coming up on the sorting of the six, so to speak, because the, you know, we still had a superior technical proposal as the administrative record shows. And there were technical issues with safeguard proposal again, as the administrative record shows. So there may have been other issues. I can't speculate what safeguard would have done with that. So that certainly was what the record was. I've lost track of time. Have we heard the tone yet or do you still have some time left? I am not quite a while ago. Oh, I'm sorry. I missed the tone. Yes, we did play the tone earlier. Apologies. All right. All right. Well, thank you, Mr. Oliver. Let's hear from the other side for rebuttal. Thank you, Alex Thomas Chuck again for safeguard. I think the issue as reflected in the court's recent question is whether it was appropriate for safeguard to be disqualified based on this record or whether the agency FLETC should have considered our proposal on the merits. And we submit that the clear answer on this record is the latter. We should have been, our proposal should have been considered on the merits. And frankly, we don't know what would have happened because even if you put back in the $6.2 million plug number, and by the way, the government and the record describes it as a plug number, there was no discretion. Everyone knew what those. Let me interrupt you and ask you about that. Your friend on the other side characterized this is maybe even the starting point for all of this was when someone in the government decided to plug that number in, as you say, you were, you were the ones that objected to their doing. So is that accurate? It's not your honor. And, and let me, Yes, it is. It is. It's, it's right in your protest. You cite the FAR provision that, that says that they can't use cost realism for that purpose in this type of solicitation. Because they didn't know at that point in time. And I'm going to go right back to where Mr. Oliver was at page 87 69 of the appendix. He cites the GAO protest, but they, the protester at that time represented by a different council didn't know what had transpired with respect to the price evaluation. Note that that is dated August 24 of 2018. That's the date of the document. Mr. Oliver sites. I'd like to point into the record then at appendix page 3159, where you have a letter from FLETC's council, Mr. Tame going back to the GAO four days later. And this is what he said. He's asking the GAO to quote unquote, dismiss this protest specifically in response to the protesters allegations. The agency discovered that it made mistakes in the consideration of protesters proposal. The agency will correct these errors and a new source selection decision. So at the time that the protest allegation was made safeguard suspected, but didn't know there was no agency report. It didn't have any of these documents that are now in the record. It knew that, that there was a price adjustment. It didn't know the nature of the price adjustment, your honor, because there were other, there's other suggestions earlier in the GAO that other adjustments were made to pricing. For example, there was, there's a reference in the record to a 2% adjustment, which is a discretionary adjustment that the agency apparently made because they weren't confident that the, you knew that these price adjustments you, you, I mean, you knew that that they had added these numbers in and you objected to it. No, I don't think that's accurate, your honor. I don't think they knew anything for certain at that point in time. And, and the temporal sequence of events is important because the protest was filed on the 24th and four days later, FLETC saying they're going to, they've discovered a mistake and they're going to correct. Can you, can you just give me the second site that you just gave us? I'm having trouble finding it in the appendix. The second letter. Yes. The letter from Mr. Kane to the GAO is dated August 28th, 2018. And it's at page, base page 3159. And then you get to the source selection decision, which is roughly one month later. And that's in the appendix at page 8 0 0 3, where you've got two sentences about safeguards. The offers price proposal was technically noncompliant because their price volume failed to include government provided amounts for the service work request cleanse as required to amendment three. Therefore this offer is not eligible for award. So we have no idea what would have happened had they adjusted our prices, which they clearly had discretion to do, to go ahead and include. In fact, for all the other offerers that were disqualified, they could have added the $6.2 million. There was no discretion associated with that. Can I ask you one, your time is up, but let me ask, can I ask you one more question? And that's with regard to the language in the solicitation and then in the amendment, if the language had not said, do not submit pricing for these cleanse, but it said do not submit your own pricing for these cleanse. Would that have sufficient clarity that you would have known what then the import of the question in the amendment and amendment three meant? Probably, but of course that's not what happened here. That would have come closer, I think, to flagging the issue, but that's not what happened here. And with respect to Mr. Oliver's comment that Dell federal controls, it does not. There's been no case that we found at the federal circuit where a vendor has been disqualified for failing to transcribe plug numbers. All of the cases involve issues where a vendor had discretion with respect to how to price a particular line item. There was absolutely no discretion involved here. Everyone knew what the numbers was. They, the agency clearly had the discretion and ability to add those numbers back in and do an evaluation on the merits, which is what they should have done. And we submit that the court heard below when it held that a transcription error that happens to involve a dollar figure, even if it's a government provided plug number involves a quote unquote material price term. We don't think that's a correct statement of the law. That can't be a correct statement of law. This was a transcription error that did not impact the evaluation. Plexi had every opportunity they could to have evaluated us on the merits. They failed to do so for reasons, which are just contained in Ms. Curran's affidavit in the appendix at page one, two, seven, three, where he specific, she specifically notes, and this is extraordinary. This is from council of record for safeguard in the protest that she spoke with Mr. Kane, who indicated that Plexi had determined a legal means to quote unquote, get rid of Suresh. And that's referring to my client, who is the owner of SRM. My time is up. Thank you. Thank you very much. We thank both sides. And the case is submitted.